SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TRACEY A. KENNEDY, Cal. Bar No. 150782
tkennedy@sheppardmullin.com
NORA K. STILES, Cal. Bar No. 280692
nstiles@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213.620.1780
Facsimile:   213.620.1398

Attorneys for Defendant
CORDAY PRODUCTIONS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA ROWELL,<br><br>          Plaintiff,<br><br>     v.<br><br>SONY PICTURES TELEVISION, INC., et al.<br><br>          Defendant. | Case No. 2:15-cv-02442 JAK (AGRx)<br>Assigned for All Purposes To:<br>Hon. John A. Kronstadt<br><br>**DEFENDANT CORDAY PRODUCTIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with Declaration of Barry Felsen and [Proposed] Order*]<br><br><u>Hearing</u><br>Date:  September 21, 2015<br>Crtrm.:  750<br>Time: 8:30 a.m. |

-1-

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 21, 2015, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 750 of the Honorable John A. Kronstadt, United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, Defendant Corday Productions, Inc. ("CPI") will seek an Order from the Court dismissing Plaintiff Victoria Rowell's ("Plaintiff") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges that six defendants, including CPI, retaliated against her by refusing to employ her as an actress on The Young and the Restless or The Bold and the Beautiful.  The Court should grant this motion and dismiss Plaintiff's claims against CPI for three reasons.  First, CPI never employed Plaintiff.  Therefore, Plaintiff cannot allege facts to establish any adverse employment action by CPI that would constitute retaliation.  To the contrary, CPI had no control over casting decisions for The Young and the Restless or The Bold and the Beautiful and cannot be held liable for an alleged action with which it had no involvement and over which it had no control.   Second, Plaintiff fails to plead any facts to establish a causal connection that would link Plaintiff's allegedly protected activity to any conduct (or omission) by CPI.  Lastly, casting decisions constitute protected exercise of free speech and, accordingly, the First Amendment bars Plaintiff's claims.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Barry Felsen, the District Court's file in this matter, any additional briefing that may be requested by the District Court or submitted under the rules, and the evidence and arguments that will be presented at the hearing on this matter.

-2-

-3-

Dated:  May 14, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    */s/ NORA K. STILES*
TRACEY A. KENNEDY
NORA K. STILES

Attorneys for Defendant
CORDAY PRODUCTIONS, INC.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ......................................................... 2

    A.    Plaintiff's Allegations in the Complaint ................................................ 2

III. ARGUMENT ........................................................................................................... 3

    A.    The Standard For A Motion To Dismiss Under F.R.C.P. 12(b)(6) ........ 3

    B.    Plaintiff Has No FEHA Retaliation Claim Against CPI Because CPI Was Never Her Employer ................................................................. 4

    C.    Plaintiff's Allegations Are Insufficient To State A Section 1981 Retaliation Claim .................................................................................. 6

    D.    The Court Should Dismiss Plaintiff's Claims Because The First Amendment Protects Creative Decisions, Including Casting Choices, As Free Speech .................................................................... 7

        1.    The First Amendment Protects Free Speech .............................. 7

        2.    The First Amendment Protects Casting Decisions ...................... 7

        3.    The First Amendment Bars Plaintiff's Claims ............................ 9

IV. CONCLUSION ..................................................................................................... 12

DEFENDANT CORDAY PRODUCTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

# TABLE OF AUTHORITIES

**Page(s)**

Cases

Ashcroft v. Iqbal
    556 U.S. 662 (2009) .................................................................................................3

Barker v. Riverside County Office of Educ.
    584 F.3d 821 (9th Cir. 2009) ..................................................................................3

Bell Atl. Corp. v. Twombly
    550 U.S. 544 (2007) .................................................................................................3

Claybrooks v. ABC, Inc.
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ...............................................8, 9, 10, 11

Coto Settlement v. Eisenberg
    593 F.3d 1031 (9th Cir. 2010) .............................................................................3, 5

Cummings v. United Healthcare Servs.
    2014 U.S. Dist. LEXIS 44789 (D. Nev. 2014).......................................................5

Doran v. Salem Inn, Inc.
    422 U.S. 922 (1975) .................................................................................................7

Erznoznik v. City of Jacksonville
    422 U.S. 205 (1975) .................................................................................................7

Frank v. U.S. West, Inc.
    3 F.3d 1357 (10th Cir. 1993) ...................................................................................5

Grosjean v. American Press Co.
    297 U.S. 233 (1936) .................................................................................................8

Hamilton Materials, Inc. v. Dow Chem. Corp.
    494 F.3d 1203 (9th Cir. 2007) .................................................................................3

Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.
    132 S. Ct. 694 (2012)..............................................................................................11

Hunter v. CBS Broad., Inc.
    221 Cal. App. 4th 1510 (2013)...............................................................................11

-ii-

Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston
    515 U.S. 557 (1995) ....................................................................................11, 12

Hustler Magazine, Inc. v. Falwell
    485 U.S. 46 (1988) ..........................................................................................7

Ingels v. Westwood One Broadcasting Services, Inc.
    129 Cal. App. 4th 1050 (2005)..................................................................8, 9, 12

Jenkins v. Georgia
    418 U.S. 153 (1974) .......................................................................................7

Johnson v. Riverside Healthcare Sys.
    534 F.3d 1116 (9th Cir. 2008) ........................................................................6

Joseph Burstyn, Inc. v. Wilson
    343 U.S. 495 (1952) ....................................................................................7, 8

Laird v. Capital Cities/ABC, Inc.
    68 Cal. App. 4th 727 (1998)..........................................................................4, 5

Leek v. Cooper
    194 Cal. App. 4th 399 (2011)..........................................................................5

Lyle v. Warner Bros. Television Prods.
    38 Cal. 4th 264 (2006) ..................................................................................11

McCoy v. Pacific Maritime Assoc.
    216 Cal. App. 4th 283 (Cal. App. 2nd 2013) ....................................................4

McDermott ex rel NLRB v. Ampersand Publishing, LLC
    593 F. 3d 950 (9th Cir. 2010) .......................................................................11

Miami Herald Publ'g. Co., Div. of Knight Newspapers, Inc. v. Tornillo
    418 U.S. 241 (1974) .....................................................................................11

Mondares v. Kaiser Found. Hosp.
    2013 U.S. Dist. LEXIS 975 (S.D. Cal. 2013).....................................................5

NAACP v. Claiborne Hardware Co.
    458 U.S. 886 (1982) ......................................................................................7

Nelson v. McClatchy Newspapers
    131 Wash. 2d 523 (1997) ..............................................................................10

-iii-

New York Times Co. v. Sullivan
   376 U.S. 254 (1964) ........................................................................................7

Pacific Gas & Electric Co. v. Public Utilities Comm'n
   475 U.S. 1 (1986) ........................................................................................11

Passaic Daily News v. NLRB
   736 F.2d 1543 (D.C. Cir. 1984)...................................................................10

Schacht v. United States
   398 U.S. 58 (1970) .......................................................................................7

Schad v. Borough of Mount Ephraim
   452 U.S. 61 (1981) .......................................................................................7

Shroyer v. New Cingular Wireless Servs.
   622 F.3d 1035 (9th Cir. 2010) .....................................................................3

Snyder v. Phelps
   562 U.S. 443 (2011) .....................................................................................7

Southeastern Promotions, Ltd. v. Conrad
   420 U.S. 546 (1975) .....................................................................................7

Surrell v. Cal. Water Serv.
   518 F.3d 1097 (9th Cir. 2008) .....................................................................6

Tamkin v. CBS Broad., Inc.
   193 Cal. App. 4th 133 (2011).....................................................................12

Thomas v. Collins
   323 U.S. 516 (1945) .....................................................................................8

United States v. Richie
   342 F.3d 903 (9th Cir. 2003) .......................................................................3

United States v. United Foods, Inc.
   533 U.S. 405 (2001) ...................................................................................10

Vernon v. State
   116 Cal. App. 4th 114 (2004).......................................................................4

West Virginia Bd. Of Ed. v. Barnette
   319 U.S. 624 (1943) ...............................................................................10, 11

Wooley v. Maynard
    430 U.S. 705, 97 S. Ct. 1428 (1977) .................................................................. 11

Statutes

42 U.S.C. § 1981 ....................................................................... 1, 2, 6, 7, 8, 10, 12

Cal. Gov't. Code § 12940(j)(1) ............................................................................ 4

Cal. Gov't. Code § 12940(j)(4)(A) ........................................................................ 4

Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 3, 7, 12

Rule 56 .................................................................................................................. 3

-v-

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Corday Productions, Inc. ("CPI"), by and through its attorneys, respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss the First Amended Complaint.

## I.  INTRODUCTION

Plaintiff Victoria Rowell ("Plaintiff") alleges that CPI refused to re-employ her as an actress on the daytime soap opera The Young and the Restless ("Y&R") due to her opposition to racial discrimination.  By her First Amended Complaint (the "FAC"), Plaintiff pleads only two causes of action against CPI: a retaliation claim under the Fair Employment and Housing Act ("FEHA") and a retaliation claim under 42 U.S.C. § 1981.  Neither claim can survive this motion to dismiss.

First and foremost, CPI never retaliated against Plaintiff because CPI never employed Plaintiff.  Plaintiff has not and cannot allege facts sufficient to establish any adverse employment action by CPI, as CPI lacked control over casting decisions for Y&R.  Similarly, nowhere in the FAC does Plaintiff claim that CPI was aware of any of Plaintiff's allegedly protected activity.  As such, Plaintiff has failed to plead sufficient facts to establish her legal theory – no causal connection exists between any alleged adverse employment action and Plaintiff's purported protected activity.

Lastly, casting decisions constitute protected exercise of free speech and, accordingly, the First Amendment bars Plaintiff's claims.  The First Amendment protects decisions relating to the content of a script, including the creative choices that impact characters and storylines.  Similarly, choosing which actors are appropriate for which roles directly relates to *how* the characters and stories are portrayed.  Casting decisions are creative decisions, and are thus protected by the First Amendment.  Accordingly, even if CPI had any control over hiring decisions at Y&R, which it did not, the First Amendment protects CPI from any liability relating to casting choices, which are creative decisions.

-1-

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Plaintiff's Allegations in the Complaint

Plaintiff Victoria Rowell ("Plaintiff") filed a Complaint in the United States District Court for the Southern District of New York on or about February 11, 2015, alleging claims for retaliation under the California Fair Employment and Housing Act ("FEHA") and 42 U.S.C. § 1981 against six defendants (the "Defendants"). That matter, through joint stipulation, was transferred to the Central District of California.  On April 21, 2015, Plaintiff filed her First Amended Complaint (the "FAC") in this Court.

Plaintiff contends that Defendants, individually or collectively, refused to rehire her on one of two television soap operas, The Young and the Restless ("Y&R") and The Bold and the Beautiful ("B&B"), in retaliation for her purported opposition to discriminatory hiring practices.  (*See* FAC, ¶¶ 111-128.)  Plaintiff does **not** pursue a retaliation claim against CPI with respect to her failure to become employed (or reemployed) on B&B.  Rather, Plaintiff's claims against CPI are limited to her allegations that CPI is responsible for her failure to become re-employed on Y&R more than seven years after she voluntarily resigned.  (*See* FAC, ¶¶ 111-117.)

Plaintiff makes only scant allegations against CPI, most of which are demonstrably false.  First, Plaintiff contends that CPI produces Y&R, together with Defendants Sony and Bell Dramatic.  (FAC, ¶ 10.)  Second, Plaintiff contends that CPI has a 1% ownership interest in Y&R.  (FAC, ¶ 13.)  Third, Plaintiff alleges that, in or around February 2013, she was denied a role on a different soap opera, Days of our Lives, a program "overseen by [SPT and] its Senior VP Steven Kent along with Ken Corday of Corday Productions."  (FAC, ¶ 81.)  Finally, Plaintiff alleges that she sent letters to CPI, Sony, and Bell Dramatic on March 3, 2014, which requested reemployment on Y&R, and that she did not receive a response.  (FAC, ¶ 83.)  CPI

-2-

is not the subject of any further allegations and, indeed, is not otherwise mentioned in Plaintiff's 129-Paragraph Complaint.

### III.  ARGUMENT

**A.     The Standard For A Motion To Dismiss Under F.R.C.P. 12(b)(6)**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A Court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.  *See* Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir. 2009).  Plausibility, for purposes of Rule 12(b)(6) requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Twombly, 550 U.S. at 570; *see* Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1041 (9th Cir. 2010).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

Although a Court generally may not look outside the four-corners of the complaint when reviewing a motion to dismiss, there are exceptions.  *See* Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  A court may consider certain materials, including documents attached to the complaint, documents incorporated by reference in the complaint, or matters of which judicial notice may be taken.  United States v. Richie, 342 F.3d 903, 908 (9th Cir. 2003).  Even if a movant submits materials beyond those otherwise permissibly considered on a motion to dismiss, the Court retains the discretion to convert the motion to one for summary judgment pursuant to Rule 56 and to rule accordingly.  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

-3-

## B. Plaintiff Has No FEHA Retaliation Claim Against CPI Because CPI Was Never Her Employer

Plaintiff's FEHA claims against CPI should be dismissed because CPI is not an "employer" of Plaintiff within the meaning of the law. See Cal. Gov't. Code §§ 12940(j)(1), (j)(4)(A). "The FEHA predicates potential liability on the status of the defendant as an employer." Vernon v. State, 116 Cal. App. 4th 114, 128 (2004); McCoy v. Pacific Maritime Assoc., 216 Cal. App. 4th 283, 302 (Cal. App. 2nd 2013); *see also* Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737-738 (1998) (even parent company of employer is not liable under FEHA unless it exceeds degree of control normally exercised by a parent corporation).

In assessing whether an employment relationship exists for FEHA purposes, courts consider the payment of salary or other benefits, the location where the work is performed, the authority of the party to hire or fire the employee, and the ability of the party to set other terms and conditions of employment. *See* McCoy, 216 Cal. App. 4th at 302 (*citing* Vernon, 116 Cal. App. 4th at 124-25). The **most** important consideration is the entity's ability to control the purported employee, and that control must be significant enough to hold the alleged employer responsible. *See* McCoy, 216 Cal. App. 4th at 302.

Here, Plaintiff has not made any allegations that CPI was her employer or any allegations sufficient to even suggest the existence of an employment relationship between Plaintiff and CPI. Plaintiff has not alleged that CPI had the ability to compensate her, the ability to hire her, or the ability to set the terms and conditions of her employment. Rather, Plaintiff alleges only that CPI produces Y&R and that CPI has a 1% ownership interest in Y&R. (*See* FAC, ¶¶ 10, 13, 14.) Thus, Plaintiff's allegations are legally insufficient to establish any employment relationship. *See, e.g.*, McCoy, 216 Cal. App. 4th at 302. Moreover, Plaintiff's allegations are false, as CPI has not produced Y&R since the mid-1970s and CPI

-4-

has no ownership interest in Y&R whatsoever.  (See Felsen Decl. ¶ 3.)[1]  Put another way, CPI lacked the ability to employ Plaintiff on Y&R or to make any decisions affecting her potential employment on Y&R.  As such, Plaintiff's FEHA claims against CPI should be dismissed in their entirety.

Plaintiff's allegations remain insufficient to survive dismissal even under a "joint employment" theory.  Presumably, by reference to a 1% ownership interest, Plaintiff intends to suggest that CPI is, in some manner, a "joint employer" or an "integrated enterprise" for purposes of imposing liability.[2]  For purposes of FEHA, courts consider whether there is an interrelation of operations, common management, centralized control of labor relations and employees, and common ownership or financial control as between two putative employers.  *See, e.g.,* Laird, 68 Cal. App. 4th at 737; Leek v. Cooper, 194 Cal. App. 4th 399, 411 (2011).

Plaintiff makes no allegations regarding the first three "joint employer" considerations.  Plaintiff offers only a single allegation concerning the fourth – that CPI possesses a 1% ownership interest in Y&R.  However, it is well-settled that this sole allegation is insufficient to satisfy the joint employment standard.  *See* Laird, 68 Cal. App. 4th at 740; Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir. 1993); *see also* Mondares v. Kaiser Found. Hosp., 2013 U.S. Dist. LEXIS 975 at *11 (S.D. Cal. 2013); Cummings v. United Healthcare Servs., 2014 U.S. Dist. LEXIS 44789 at *8-9 (D. Nev. 2014).

In short, CPI was neither an employer of Plaintiff nor a potential employer of Plaintiff.  Accordingly, Plaintiff's FEHA claim against CPI should be dismissed.

---

[1]   On a motion to dismiss, a Court may permissibly consider documents outside of the complaint where the allegations necessarily incorporate other documents by reference.  *See* Coto Settlement, 593 F.3d at 1038 ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon the document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance.").  Here, Plaintiff alleges an ownership interest that is refuted by corporate documents, which CPI respectfully submits should be considered.  (*See* Felsen Decl. ¶ 3, Ex. A.)

[2]   To be clear, Plaintiff does not allege that CPI has an ownership interest in one of the other defendants but, instead, that CPI has an ownership interest in Y&R.  (*See* FAC, ¶ 13.)

-5-

## C. Plaintiff's Allegations Are Insufficient To State A Section 1981 Retaliation Claim

To establish a retaliation claim under Section 1981, a plaintiff must allege: (a) she engaged in a protected activity; (b) she suffered an adverse employment action; and (c) there was a causal connection between the protected activity and the adverse employment action. Surrell v. Cal. Water Serv., 518 F.3d 1097, 1108 (9th Cir. 2008). Here, Plaintiff's section 1981 claim against CPI fails because Plaintiff pleads no facts to connect her purportedly protected activity to any alleged adverse employment action by CPI.

Plaintiff bases her retaliation claim against CPI on one, solitary allegation: that Plaintiff did not receive a response to a letter sent or about March 3, 2014 to CPI (as well as to Sony and Bell Dramatic) in which she requested reemployment on Y&R. (FAC, ¶ 83.) While CPI entertains serious doubts as to whether the failure to respond to a letter requesting employment constitutes an "adverse employment action,"[3] Plaintiff's claim fails for two separate and independent reasons. First, as set forth above, CPI was not Plaintiff's employer or potential employer and did not have the ability to exercise any control over the alleged casting decisions at Y&R. (See Felsen Decl. ¶ 3.) CPI cannot be held liable for failing to respond to a request for employment on Y&R, a television program in which CPI had no involvement and over which CPI had no control.

Second, even assuming Plaintiff sent the letter and further assuming it was received by CPI, Plaintiff does not allege that CPI refused to respond for retaliatory reasons. Indeed, Plaintiff does not allege that CPI generally, or anyone at CPI specifically, was even aware of any protected activity in which she allegedly engaged. (See FAC, ¶¶ 23-24, 28, 36-46.) Nonetheless, Plaintiff's bare allegation against CPI falls short of the factual allegations necessary to survive a motion to dismiss. See Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir.

---

[3] Particularly where there is not even an allegation that there was an open position for which reemployment was sought.

-6-

2008)("A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory).

For each of these reasons, Plaintiff has failed to state a retaliation cause of action against CPI under 42 U.S.C. § 1981 and the Court should dismiss her claims pursuant to Federal Rule 12(b)(6).

**D.     The Court Should Dismiss Plaintiff's Claims Because The First Amendment Protects Creative Decisions, Including Casting Choices, As Free Speech**

1.     The First Amendment Protects Free Speech

The First Amendment shields protected speech and expression from private litigation as well as statutory restrictions and criminal penalties. *See* New York Times Co. v. Sullivan, 376 U.S. 254, 277 (1964) ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law ..."). Thus, civil lawsuits between private parties cannot apply anti-discrimination laws in a manner that restricts First Amendment freedoms, as doing so constitutes prohibited government action. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 916 n. 51 (1982); *see also* Snyder v. Phelps, 562 U.S. 443 (2011) ("[t]he Free Speech Clause of the First Amendment . . . can serve as a defense") (*citing* Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50-51 (1988)).

2.     The First Amendment Protects Casting Decisions

Television programs, along with motion pictures, radio broadcasts, and live entertainment are "protected ... and fall within the First Amendment guarantee." Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65-66 (1981)(*citing* Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952); Schacht v. United States, 398 U.S. 58 (1970); Jenkins v. Georgia, 418 U.S. 153 (1974); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546 (1975); Erznoznik v. City of Jacksonville, 422 U.S. 205 (1975); Doran v. Salem Inn, Inc., 422 U.S. 922 (1975)). Media content "published

-7-

and sold for profit" is still "a form of expression whose liberty is safeguarded by the First Amendment." Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501 (1952)(*citing* Grosjean v. American Press Co.*, 297 U.S. 233 (1936); Thomas v. Collins, 323 U.S. 516 (1945)).

In similar fashion, California state courts have held that casting decisions are an exercise of free speech. Ingels v. Westwood One Broadcasting Services, Inc., 129 Cal. App. 4th 1050, 1064 (2005) is especially instructive because, as in this case, it featured a plaintiff who sought to punish a media outlet for failing to allow him air time. After finding that a radio call-in show would otherwise be subject to the state's law prohibiting age discrimination in the provision of public accommodations, the court affirmed that media outlets "have a First Amendment right to control the content of their program, subject to strict scrutiny." Id. at 1074. It held that "the broadcaster's choice of which callers to allow on the air is part of the content of speech," and therefore regulations of those choices were subject to the highest levels of scrutiny. Id. In the face of such scrutiny, a plaintiff, the Court held, must demonstrate a compelling interest. Id. The plaintiff could not make such a showing and his claim was barred by the First Amendment. Id.

In perhaps the most important federal court decision on this topic, the U.S. District Court in Nashville likewise concluded that casting decisions are clearly protected under the First Amendment. The plaintiffs in Claybrooks v. ABC, Inc., 898 F. Supp. 2d 986 (M.D. Tenn. 2012), sued the producers of the reality television programs *The Bachelor* and *The Bachelorette,* claiming that the defendants violated federal anti-discrimination laws (specifically, Section 1981) by not choosing the plaintiffs, African-American males, to be contestants on *The Bachelor. See* id. at 988-990. The court noted that "no federal court ha[d previously] addressed the relationship between anti-discrimination laws and the First Amendment" within the context of "casting decisions for an entertainment program." Id. at 996. The court then rejected the plaintiffs' proposed First Amendment safeguard – that Section

-8-

1981 not be applied in "identity-themed programming" – as doing so would "embroil courts in questioning the creative process behind any television program or other dramatic work," and would "threaten[] to chill otherwise protected speech." Id. at 997-998.  Instead, the court found that "casting decisions are a necessary component of any entertainment show's creative content," reasoning that the "producers of a television program, a movie, or a play could not effectuate their creative vision, as embodied in the end product marketed to the public, without signing cast members." Id. at 999.  The court found there is no difference, for purposes of the First Amendment, "between casting decisions and the end product, which itself is indisputably protected as speech by the First Amendment," because "regulating the casting process necessarily regulates the end product." Id.  The court concluded that "casting and the resulting work of entertainment are inseparable and must *both* be protected to ensure that the producers' freedom of speech is not abridged.  Id.

    3.    The First Amendment Bars Plaintiff's Claims

The facts and reasoning in Claybrooks and Ingels are directly applicable here. Plaintiff is attempting to impact the messages of daytime television programs by asking the Court to dictate which characters, and ultimately which story lines, are depicted, and to further dictate which actress should be hired to portray those characters.  Indeed, Plaintiff's claims impact the First Amendment even more than those of the plaintiffs in Claybrooks.

Here, Plaintiff is not complaining that she was not chosen for an *existing* part. Instead, she insists that the scripts must be altered either to create a new character or to **resurrect** one that has not been on the air in almost eight years, and alleges she has been retaliated against because CPI has not already done so.  (FAC, Prayer for Relief A.)[4]  If Plaintiff succeeds on her claim and the Court orders that she be re-

---

[4]   Notably, as her claims relate only to Y&R and B&B, Plaintiff does not ask the Court for an order directing CPI to offer her employment on Days of Our Lives.

employed on Y&R, the Court would be ordering producers, writers, and directors to change their creative content by adding characters and storylines so that Plaintiff may have a role on the show – directly influencing the content being portrayed.  An award of monetary damages functions similarly; the Court would be punishing CPI for not creating (or here resurrecting) a character or storyline solely for Plaintiff.  These remedies run afoul of the First Amendment.  *See* Passaic Daily News v. NLRB, 736 F.2d 1543, 1557 (D.C. Cir. 1984)(reversing an order of the National Labor Relations Board to force a newspaper to print an employee's columns, reasoning that "[i]mplementation of a remedy that requires governmental coercion gives rise to a confrontation with the First Amendment."); *see also* Nelson v. McClatchy Newspapers, 131 Wash. 2d 523 (1997)(finding newspaper's requirement that its reporters abstain from political activity to be protected by the First Amendment, as "[e]ditorial integrity and credibility are core objections of editorial control and thus merit protection under the free press clauses").

Plaintiff seeks not only to affect casting decisions which, per Claybrooks, are protected even when producers decide who will fill a preexisting role, but goes further in attempting to use the FEHA and Section 1981 to directly influence the plot and broadcast content of television programs.  However, the decision to cast *or not to cast* Plaintiff impacts the characters and their storylines, which necessarily impacts the protected content and speech of the programs.  Indeed, to require a defendant to create a role or story line for Plaintiff and to cast Plaintiff in that role would be an order for creative speech, in clear violation of the First Amendment. *See e.g.,* West Virginia Bd. Of Ed. v. Barnette, 319 U.S. 624, 634 (1943) (the First Amendment does not "le[ave] it open to public authorities to compel [a person] to utter" a message with which he does not agree); *see also* United States v. United Foods, Inc., 533 U.S. 405, 410-411 (2001) (First Amendment protections against compelled speech extend to businesses).

-10-

The First Amendment protects the right to choose the messages of television programs, in both what is said and what is not said, including which characters are portrayed and not portrayed and how each character's story develops.  *See* Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 573, 575 (1995); *see also* Pacific Gas & Electric Co. v. Public Utilities Comm'n, 475 U.S. 1, 10-12 (1986)("the State is not free to 'tell a newspaper in advance what it can print and what it cannot'"); Wooley v. Maynard, 430 U.S. 705, 717, 97 S. Ct. 1428, 1436 (1977)(declaring unconstitutional state law requiring New Hampshire motorists to display the state motto – "Live Free or Die" – on their license plates); Miami Herald Publ'g. Co., Div. of Knight Newspapers, Inc. v. Tornillo, 418 U.S. 241, 258 (1974)(declaring unconstitutional state law requiring newspapers to provide a political candidate equal space in their publications to reply to any criticism or attacks on his or her record); Barnette, 319 U.S. at 642 (declaring unconstitutional state law requiring schoolchildren to pledge allegiance to the United States flag).

The First Amendment similarly protects casting choices.  Claybrooks, 898 F. Supp. 3d at 999; *see also* Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 132 S. Ct. 694, 709-710 (2012) (First Amendment Establishment and Free Exercise clauses precluded application of federal employment discrimination laws to religious institution's selection of its own ministers); McDermott ex rel NLRB v. Ampersand Publishing, LLC, 593 F. 3d 950, 962 (9th Cir. 2010) ("Telling the newspaper that it must hire specified persons . . . is bound to affect what gets published.  To the extent the publisher's choice of writers affects the expressive content of its newspaper, the First Amendment protects that choice."); Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 297 (2006) (Chin, J., concurring) ("When, as here, the workplace product is the creative expression itself, free speech rights are paramount .... Lawsuits like this one, directed at restricting the creative process in a workplace *whose very business is speech related,* present a clear and present danger to fundamental free speech rights.")(emphasis in original); Hunter v.

-11-

CBS Broad., Inc., 221 Cal. App. 4th 1510, 1521 (2013); Tamkin v. CBS Broad., Inc., 193 Cal. App. 4th 133, 143 (2011); Ingels, 129 Cal. App. 4th at 1064.

In short, Plaintiff cannot use the FEHA and Section 1981 to force her way back onto a daytime television show which she left more than seven years ago, because allowing her to do so would necessarily require a change to the expressive content of the daytime soap operas, in violation of the First Amendment. *See* Hurley, 515 U.S. at 572-73, 115 S. Ct. at 2347. Accordingly, Plaintiff fails to state a legally cognizable claim, and the FAC must be dismissed in its entirety with prejudice.

## IV.  CONCLUSION

For each of the foregoing reasons, CPI respectfully requests that the Court enter an Order:  (i) dismissing Plaintiff's claims against CPI under FEHA for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); (ii) dismissing Plaintiff's claims against CPI under 42 U.S.C. § 1981 pursuant to Federal Rule of Civil Procedure 12(b)(6); and (iv) for such other and further relief as this Court deems just and proper.

Dated:  May 14, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /S/ *NORA K. STILES*
TRACEY A. KENNEDY
NORA K. STILES

Attorneys for Defendant
CORDAY PRODUCTIONS, INC.

-12-