UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTIONS TO DISMISS (DKTS. 90, 93, 95); DEFENDANTS' MOTIONS TO STRIKE (DKT. 91, 92)**

I. **Introduction**

Plaintiff Victoria Rowell ("Rowell") brought this action against the following parties: (i) Sony Pictures Television, Inc. ("Sony Television"); (ii) Sony Pictures Entertainment, Inc. ("Sony Entertainment"); (iii) Bell Dramatic Serial Company, L.P. ("Bell Dramatic"); (iv) Bell-Phillip Television Production Inc. ("Bell-Phillip"); (v) Corday Productions, Inc. ("Corday"); and (vi) CBS Corp. ("CBS") (collectively "Defendants"). First Amended Complaint ("FAC"), Dkt. 75. Plaintiff is an actor who appeared for many years as a character on the television soap opera called *The Young and the Restless* ("Y&R"). The FAC alleges that, as a result of her advocacy in support of increasing the number of African Americans as characters of Y&R, she was the victim of employment retaliation.

Defendants Sony Television, Sony Entertainment, and CBS brought a Motion to Dismiss ("Sony and CBS Motion to Dismiss"). Dkt. 90. Defendants Bell Dramatic and Bell-Phillip joined that motion ("Bell Motion to Dismiss"). Dkt 93. Defendant Corday also filed a Motion to Dismiss ("Corday Motion to Dismiss"). Dkt. 95. Plaintiff filed an opposition to these motions, Dkt. 108, to which the moving parties replied, Dkt.112, 114, 115.

Defendants Sony Television, Sony Entertainment, and CBS also filed an anti-SLAPP motion pursuant to Cal. Code Civ. Proc. § 425.16 ("Motion to Strike"). Dkt. 91. Defendants Bell-Phillip and Bell-Dramatic also joined that motion. Dkt. 92. Plaintiff filed an opposition to the Motion to Strike, Dkt. 109, to which the movants replied, Dkt. 113.

A hearing on all of these motions was held on September 21, 2015, and the matters were taken under submission. Dkt. 122. For the reasons stated in this Order, the Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**, and the Motion to Strike is **DEFERRED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

## II. Factual Background

### A. Plaintiff's Appearance on *The Young and the Restless* and Subsequent Departure from the Show

From 1990 through 2007, Plaintiff played the character Drucilla Barber Winters on Y&R. FAC, Dkt. 75 ¶¶ 5, 20. She appeared in more than 2000 episodes of Y&R. *Id.* During this same time period, Plaintiff was a vocal advocate for increasing the number of African Americans who appeared as actors in television soap operas and who worked in "behind the camera" roles in those productions, *e.g.*, as writers, directors and producers. *Id.* ¶ 1. Plaintiff also advocated for an increase in the number of African-American actors on Y&R, and claims that Defendants treated African Americans as "second-class citizens." *Id.* ¶ 27.[1]

The FAC alleges that, as part of her efforts to encourage and facilitate greater ethnic diversity on Y&R, Plaintiff sought to become an official writer and director for the show. *Id.* ¶ 29. Thus, in 2005, during the negotiation of a new, three-year acting contract for Y&R, Plaintiff "sought provisions allowing her to officially become a writer or to direct episodes of Y&R." *Id.* Her offer was not accepted. *Id.* ¶ 30.

In 2007, after Defendants engaged in several allegedly hostile acts towards Plaintiff, she "reluctantly left" Y&R to "seek additional opportunities for her writing skills." *Id.* ¶ 35. Thereafter, Plaintiff continued to speak out about against what she believed to be ongoing discrimination against African Americans who sought or had roles or positions associated with Y&R. *Id.* ¶¶ 40-43.

### B. Plaintiff's Efforts to Have Plaintiff's Character Return to Y&R

The FAC alleges that after Plaintiff's departure from Y&R in early 2007, the show's audience "created a loud drumbeat of demand" for her to return to play a character on the show. *Id.* ¶ 52. The FAC alleges that Defendants "explored bringing back the character played by a different actress" but then "scrapped the plan." *Id* ¶ 53. Beginning in 2010, Plaintiff "both directly and through agents and intermediaries, repeatedly approached Defendants to obtain re-employment on Y&R." *Id.* ¶ 56. Plaintiff alleges that "it would be easy for writers to write and for her to recreate her role and re-integrate her into Y&R because many characters remain on the show who were created as [her character's] family members and acquaintances." *Id.* ¶ 91.

Plaintiff concedes that her efforts to be rehired by Y&R "did not involve applying for an open position for which Defendants were actively seeking candidates." *Id.* ¶ 57. However, the FAC alleges that "[f]requently known characters return to soap operas without going through an application and audition process for an open position." *Id.* Plaintiff approached Defendants on numerous occasions to request that

---

[1] The FAC often uses the word, "Defendants," without making clear to which of the six named defendants it is referring. However it is clear that the FAC brings claims related to Y&R against all Defendants, and claims related to *The Bold and the Beautiful* ("B&B") against Bell Dramatic, Bell-Phillip and CBS. Thus, when the FAC lacks specificity, for purposes of the discussion in this Order, it is assumed that its allegations as to "Defendants" related to Y&R are intended to apply to all Defendants, and that its allegations as to "Defendants" related to B&B are intended to apply to Bell Dramatic, Bell-Phillip and CBS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

a story line be created to facilitate the return of her character to a role on Y&R. *Id.* ¶¶ 58-84. Her requests were declined. *Id.*

    C.    Plaintiff's Efforts to Have Her Character Appear on *The Bold and the Beautiful*

Plaintiff also sought to be given a role on B&B which, according to the allegations in the FAC, is Y&R's "sister soap opera." *Id.* ¶¶ 1, 56. Plaintiff claims that "numerous actors and actresses, especially white ones, have been permitted over the years to cross over from one soap opera to the other, bringing their old role to the new show or having a new character created for them." *Id.* ¶ 60. Plaintiff approached certain Defendants on several occasions about such an opportunity through the creation of a story line in which she would appear on B&B as her character from Y&R. *Id.* ¶¶ 58-84. Plaintiff alleges that "because of the crossover nature of the audience, it would be easy for writers to write and for her to recreate the role of [her character] on B&B." *Id.* ¶ 91. These requests were repeatedly declined. *Id.*

On one occasion, Plaintiff's agent proposed that Plaintiff fill an open role on B&B:

> B&B was looking for a well-known actress to play the role of Fern, a 50-55 year old African American woman. . . . The agent did not receive a response, and eventually found out that [Defendants] decided to backburner the role. B&B has never resurrected the proposed role. Ms. Rowell believes that the character [was] shelved because [Defendants did] not want to give her any chance at winning the job.

*Id.* ¶ 82.

    D.    The Alabama Majesty Awards at Miles College

On February 2, 2015, Plaintiff's production company entered a contract with LeMont Scott Group. Through that agreement, Plaintiff agreed to serve as "Mistress of Ceremonies" at the Alabama Majesty Awards at Miles College (the "Alabama Event"). *Id.* ¶ 100. This contract provided for a payment of $5000 for these services, which were to be performed in February 2015.

Plaintiff filed the Complaint in this action on February 11, 2015. *Id.* ¶ 103. That evening, an officer of LeMont Scott Group received two text messages from a contact at Wells Fargo, which was a sponsor of the Alabama Event. One stated, "problem," and the other stated, "Victoria is suing Sony and CBS." *Id.* ¶ 104. The officer was subsequently informed that Wells Fargo was withdrawing its sponsorship due to "current media based ad/marketing relationships." *Id.* Plaintiff alleges that other sponsors, including Wal-Mart and an unknown third company, also withdrew as sponsors of the Alabama Event for similar reasons. *Id.* Thus, the FAC alleges that, "CBS caused Wells Fargo, Wal-Mart and a third company to withdraw their sponsorship of the Alabama event in order to further retaliate against [Plaintiff]." *Id.* ¶ 106. Plaintiff subsequently agreed to reduce to $2000 the fee payable under the contract. *Id.* ¶ 107.

    E.    Administrative Proceedings

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

On August 28, 2013, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") against Sony Entertainment, Bell Dramatic, and Corday. FAC, Dkt. 75 ¶ 6; Dkt. 93-2 at 2. On August 19, 2014, the DFEH issued a "right to sue" letter. FAC, Dkt. 75 ¶ 7. On February 11, 2015, Plaintiff filed the Complaint in this action in the Southern District of New York. Compl., Dkt. 1.

On March 24, 2015, Plaintiff filed a second complaint with the DFEH against CBS. It alleged a new act of retaliation in response to the filing the Complaint. FAC, Dkt. 75 ¶ 8. On March 24, 2015, DFEH issued a "right to sue" letter with respect to that claim. *Id.*

  F.  Change of Venue

On April 21, 2015, Plaintiff filed the FAC in this District. It was filed pursuant to a stipulation to transfer the action from the Southern District of New York. Dkt. 75.

**III.**  <u>Analysis</u>

  A.  Motions to Dismiss

    1.  <u>General Legal Standards</u>

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

    2.  <u>Application</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

As previously noted, the FAC is somewhat unclear as to which claims are advanced against each of the six Defendants. The FAC refers to two causes of action, but it appears to advance six distinct claims: (i) retaliation in violation of 42 U.S.C. § 1981 for Defendants' refusal to rehire Plaintiff on Y&R (against all Defendants); (ii) retaliation in violation of California's Fair Employment and Housing Act ("FEHA") for Defendants' refusal to rehire Plaintiff on Y&R (against all Defendants except CBS); (iii) retaliation in violation of 42 U.S.C. § 1981 for Defendants' refusal to hire Plaintiff on B&B (against Bell Dramatic, Bell-Phillip, and CBS); (iv) retaliation in violation of FEHA for Defendants' refusal to hire Plaintiff on B&B (against Bell Dramatic and Bell-Phillip); (v) retaliation in violation of 42 U.S.C. § 1981 for causing the withdrawal of sponsorship of the Alabama Event (against CBS only); and (vi) retaliation in violation of FEHA for causing the withdrawal of sponsorship of the Alabama Event (against CBS only). *Id.*

    a) Whether the First, Second, Third, and Fourth Causes of Action State a Claim for Retaliation in Violation of Section 1981 and FEHA for Defendants' Refusal to Hire and/or Rehire Plaintiff on Y&R and B&B

In her first cause of action, Plaintiff alleges that all Defendants retaliated against her in violation of Section 1981 by refusing to rehire her on Y&R. FAC, Dkt. 75 ¶¶ 111-17. In her second cause of action, Plaintiff alleges that all Defendants except CBS retaliated against her in violation of FEHA by refusing to rehire her on Y&R. *Id.*[2]

In her third cause of action, Plaintiff alleges that Defendants Bell Dramatic, Bell-Phillip, and CBS retaliated against her in violation of Section 1981 for refusing to hire her on B&B. *Id.* ¶¶ 118-24. In her fourth cause of action, Plaintiff alleges that Defendants Bell Dramatic and Bell-Phillip retaliated against her in violation of FEHA by refusing to hire her on B&B. *Id.*[3]

    (1) <u>Legal Standard for Retaliation</u>

To establish a prima facie case of retaliation under Section 1981 and FEHA,[4] Plaintiff must show the following: (i) she was engaged in a protected activity; (ii) her employer subjected her to an adverse employment action; and (iii) there is a causal link between the protected activity and the employer's action. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008) (Section 1981); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (FEHA).

An employer's refusal to hire can constitute an adverse employment action. Under federal law, to establish a prima facie case for such a claim a plaintiff may show that he or she "applied and was qualified

---

[2] Plaintiff excludes CBS from this cause of action "because CBS was not named in the initial charge filed with DFEH." *Id.* ¶ 117.
[3] Plaintiff excludes CBS from this cause of action for the same reason stated as to the second cause of action. *Id.* ¶ 124.
[4] Claims of retaliation under Section 1981 and FEHA are analyzed by the standards that apply to such claims under Title VII. *See, e.g.*, *Manatt v. Bank of Am.*, 339 F.3d 792, 800-01 (9th Cir. 2003) (applying Title VII framework to Section 1981 retaliation claim); *Fiat v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992) (FEHA retaliation claims are analogous to Title VII claims and are "evaluated under federal law interpreting Title VII cases.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

for a job for which the employer was seeking applicants," that "despite [his or her] qualifications, [he or she] was rejected," and that "after [his or her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, this is not a rigid standard. Therefore, it "is not necessarily applicable in every respect in differing factual situations." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 n.6 (1981). The same prima facie approach applies under California law. *See, e.g.*, *Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App. 4th 138, 149 (Cal. Ct. App. 1997) (under FEHA, a prima facie case for a failure to hire claim is established whenever a plaintiff shows "that he applied and was qualified for a job for which the employer was seeking applicants," that "despite his qualifications, he was rejected" and that "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications" (internal quotation marks omitted)).

Where a plaintiff is unable to show that there was an open position, an adverse employment action cannot be established. *See, e.g.*, *Galvez v. Cardinal Health, Inc.*, 2008 WL 5387399, at *3 (E.D. Cal. Dec. 19, 2008) (granting defendant's motion for summary judgment after plaintiff "concede[d] that there were no available positions for which Plaintiff was qualified"); *Scholar v. Pac. Bell*, 1990 WL 364626, at *6 (N.D. Cal. Apr. 27, 1990) (denying leave to amend because a prior amended complaint "allege[d] no available position which plaintiff applied and was qualified for," and where her declarations failed to "indicate that she was applying for a specific position").

    (2)  <u>Application</u>

      (a)  Whether Plaintiff Has Alleged an Adverse Employment Action under Her First and Second Causes of Action for Failure to Rehire on Y&R

In her first cause of action, Plaintiff alleges that all Defendants retaliated against her in violation of Section 1981 by refusing to rehire her for a role on Y&R. FAC, Dkt. 75 ¶¶ 111-17. In her second cause of action, Plaintiff alleges that all Defendants, except CBS, retaliated against her in violation of FEHA by refusing to rehire her for a role on Y&R. *Id.* ¶ 117.[5]

The FAC does not sufficiently allege a prima facie case for a retaliation claim based on Defendants' failure to rehire her for a role on Y&R. The FAC does not allege that Plaintiff applied for an open position on Y&R after she left the program. Indeed, it does not allege that there ever was an open position on Y&R for which she was qualified. The FAC concedes that, as to Y&R, her "efforts to be rehired did not involve applying for an open position for which Defendants were actively seeking candidates." FAC, Dkt. 75 ¶ 57. Instead, the FAC describes the numerous times Plaintiff contacted Defendants to request that her character be revived, because it is common that "known characters return to soap operas without going through an application process for an open position." *Id.*

Plaintiff cites no case law that supports her position that a prima facie retaliation claim can be made due

---

[5] Plaintiff excludes CBS from this cause of action. *See* n.2, *supra*, and FAC, ¶ 117.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

to an alleged failure to rehire as a result of a refusal to create a new position or reopen an old one. Rather, she cites cases in support of her general argument that a failure to rehire may constitute an adverse employment action. Dkt. 108 at 18-19. In her Opposition, Plaintiff relies on *Kelly v. Conco Co.*, 196 Cal. App. 4th 191, 212 (2011). Dkt. 108 at 14. But there, a failure to rehire claim was rejected because plaintiff had failed to establish that there had been an open position: "[Plaintiff] cannot show that [his employer] discriminated against him by failing to hire him for a job for which he did not apply." *Id.* Plaintiff's reliance on *Josephs v. Pac. Bell*, 443 F.3d 1050 (9th Cir. 2006) is also unpersuasive. There, plaintiff's claim centered on a reinstatement remedy provided in the applicable collective bargaining agreement. *Id.* at 1057.

In further support of her position as to why the FAC is sufficient, Plaintiff argues that there are unique practices used in the production of soap operas. She contends that one of them is that actors who previously appeared on a show, but whose roles ended, may be rehired as the character reappears, and that this occurs without a formal application process. In effect, Plaintiff claims that there is always a position that is constructively open. This alone is not a sufficient basis to state a claim. Indeed, such an approach has the potential to open the door to vast number and wide variety of claims in many industries in which those who did not pursue open positions claimed that employers should have created them. There is no justification for such a material expansion of the *McDonnell Douglas* test. It would create a new issue: whether there was a reasonable basis for an employer not to have created a new position. Moreover, to alter the first part of the test to permit such a claim, would effectively conflate this with the second step, in which the employer is required to state a non-discriminatory reason for the decision not to hire the plaintiff. Logically, among the non-discriminatory reasons would be that there was no open position.

For all of the foregoing reasons, Plaintiff's first and second causes of action for failure to rehire on Y&R are dismissed, with leave to amend, if Plaintiff can do so in good faith and in conformance with the analysis in this Order.

> (b) Whether Plaintiff Suffered an Adverse Employment Action Under Her Third and Fourth Causes of Action for Failure to Hire on B&B

The third cause of action alleges that Defendants Bell Dramatic, Bell-Phillip, and CBS retaliated against Plaintiff in violation of Section 1981 for refusing to hire her on B&B. *Id.* ¶¶ 118-24. The fourth cause of action alleges that, for the same reasons, Defendants Bell Dramatic and Bell-Phillip retaliated against Plaintiff in violation of FEHA. *Id.*[6]

The FAC fails to plead a prima facie case for a retaliation based on Defendants' failure to hire Plaintiff to fill a role on B&B. Plaintiff concedes that she never actually applied for a position that was or became such a role. However, unlike the claims involving Y&R, the FAC alleges that Plaintiff applied for an open position for which she was qualified. Specifically, in May 2013, the FAC alleges that Plaintiff's agent

---

[6] Plaintiff excludes CBS from this cause of action for the same reasons stated above.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

proposed her for a B&B role. FAC, Dkt. 75 ¶ 82. However, the FAC does not allege that this position remained open and that Defendants continued to seek qualified applicants after Plaintiff was rejected. *McDonnell Douglas*, 411 U.S. at 802 (plaintiff must show that "after [his or her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications"); *Sada*, 56 Cal. App. 4th at 149 (a plaintiff must establish that, "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications" (internal quotation marks omitted)). Indeed, the FAC conceded that "[t]he agent did not receive a response, and eventually found out that [Defendant] decided to backburner the role. B&B has never resurrected the proposed role." FAC, Dkt. 75 ¶ 82.

Prima facie standards may be flexible and are "not necessarily applicable in every respect in differing factual situations." *Burdine*, 450 U.S. at 254 n.6. However, as with the prior claims, these are not adequate as pleaded. The allegations do not meet the governing legal standards. Therefore, the third and fourth causes of action for failure to hire on B&B are dismissed, with leave to amend if Plaintiff can do so in good faith and in conformance with the analysis in this Order.

    (c)  Whether the First, Second, Third, and Fourth Causes of Action are Barred by the First Amendment

      (i)  <u>Legal Standard for First Amendment Protection</u>

The First Amendment to the United States Constitution states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. Similarly, the California Constitution states that "[a] law may not restrain or abridge liberty of speech or press." Cal. Const., Art. I, § 2. The First Amendment shields protected speech and expression from private litigation as well as statutory restrictions and criminal penalties. *See N. Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law . . . ."). Thus, civil lawsuits between private parties cannot apply anti-discrimination laws in a manner that restricts First Amendment freedoms, as doing so constitutes prohibited government action. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 n. 51 (1982).

"Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First Amendment guarantee." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65-66 (1981). Media content "published and sold for profit" is still "a form of expression whose liberty is safeguarded by the First Amendment." *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952).

      (ii)  <u>Application</u>

Defendants argue that the first four causes of action seek to hold Defendants liable for casting decisions, in violation of their First Amendment rights. Dkt. 90 at 20. Specifically, Defendants argue that "Plaintiff is attempting to impact the messages of both Y&R and B&B by asking the Court to dictate what story lines and characters are depicted on the shows, and to further dictate whom [sic] should be cast on the show." Dkt. 90 at 24-25.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

One district court has held that casting decisions are protected by the First Amendment. *Claybrooks v. ABC, Inc.*, 898 F. Supp. 2d 986 (M.D. Tenn. 2012). The plaintiffs in that action sued ABC, the producer of the reality television programs *The Bachelor* and *The Bachelorette*, claiming that it violated federal antidiscrimination laws by not selecting African Americans as contestants on these programs. *See id.* at 988-90. Plaintiffs alleged that ABC intentionally cast only Caucasians as the bachelors and bachelorettes due to the potential controversy that could arise if the shows featured interracial couples. *Id.* at 989. In dismissing the action, the district court concluded that the First Amendment barred such discrimination claims. The court explained that under the facts alleged, the application of anti-discrimination laws "would force the defendants to employ race-neutral criteria in the casting process, thereby regulating the creative content of the Shows." *Id.* at 993; *see also id.* at 1000 ("Ultimately, whatever messages *The Bachelor* and *The Bachelorette* communicate or are intended to communicate . . . the First Amendment protects the right of the producers of these Shows to craft and control those messages, based on whatever considerations the producers wish to take into account.").

The present case is distinguishable from *Claybrooks*. In a challenge to casting decisions, there is a critical distinction between claims of alleged discrimination and those of alleged retaliation. Plaintiff does not allege that the failure to hire her was due to her race or that the casting decisions by any of the Defendants were made on that ground. Therefore, there is no requested relief that would require a casting decision based on ethnicity. Such an order could be deemed to impinge Defendants' right to control creative content. Instead, Plaintiff alleges that she was not hired in retaliation for engaging in protected speech. Thus, unlike the plaintiff in *Claybrooks*, Plaintiff here does not allege that the decision not to hire her was related to Defendants' creative vision for their programs. The FAC instead alleges that the retaliation arose from disagreements with Plaintiff and her positions about hiring more African Americans, not ones about the appropriate racial diversity for characters on the programs. For these reasons, based on the present allegations of the FAC, Defendants' rights to free speech would not be unduly impaired by the relief, if any, that could be granted should Plaintiff prevail on these claims.

      (d) Whether the Fifth and Sixth Causes of Action State a Claim for Retaliation in Violation of Section 1981 and FEHA for CBS' Orchestration of Withdrawal of Sponsorship from the Alabama Event

      (i) <u>Legal Standard</u>

To establish a prima facie case of retaliation under Section 1981 and FEHA,[7] Plaintiff must show each of the following: (i) she engaged in a protected activity; (ii) her employer subjected her to an adverse employment action; and (iii) there is a causal link between the protected activity and the employer's action. *Surrell*, 518 F.3d at 1108 (Section 1981); *Yanowitz*, 36 Cal. 4th at 1042 (FEHA).

      (ii) <u>Application</u>

---

[7] The standards that apply to such claims are discussed above. *See* n.4, *supra*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

Plaintiff has failed to allege facts sufficient to state a plausible claim under the fifth and six causes of action. The FAC includes allegations regarding how Plaintiff became involved in the Alabama Event, as well as certain details about it. FAC, Dkt. 75 ¶¶ 98-02. The FAC also alleges that two corporate sponsors, Wells Fargo and Wal-Mart, withdrew. *Id.* ¶¶ 104-05. The FAC alleges that each did so because, as shown in certain text messages between an officer of the organization that was to host the Event and an officer at Wells Fargo, there were concerns about Plaintiff's having brought this action against Sony and CBS. *Id.* ¶ 104. However, the FAC does not allege any details to support the claim that CBS had any role in the Alabama Event. Rather, it makes the conclusory assertion that CBS worked behind the scenes to encourage sponsors to withdraw their support: "[u]pon information and belief, CBS caused Wells Fargo, Wal-Mart, and a third company to withdraw their sponsorship of the Alabama Majesty Awards in order to further retaliate against [Plaintiff]." *Id.* ¶ 106. This language does not meet the standards of *Twombly* and *Iqbol. See Twombly,* 550 U.S. at 570 (plaintiff must allege "more than a sheer possibility that a Defendant has acted unlawfully"). Therefore, the fifth and six causes of action are dismissed, with leave to amend if Plaintiff can do so in good faith and in conformance with the analysis in this Order.

      B.      Claims Unique to Particular Defendants

           1.      <u>Bell-Phillip</u>

                 a)      First and Second Causes of Action (Y&R Claims)

Defendant Bell-Phillip claims that the first and second causes of action as to Y&R should be dismissed as to Bell-Phillip. The basis for this claim is the assertion that Bell Dramatic does not own Bell-Phillip, and Bell-Phillip has no association with Y&R. Dkt. 93 at 7. Bell-Phillip presents the declaration of Ann Willmott, Vice President of Operations for Bell-Phillip, to provide evidentiary support for these assertions. Dkt. 93-1.

The Complaint alleges that Bell Dramatic has a 48% ownership interest in Y&R. Dkt. 75 ¶ 11. Further, it alleges that Bell Dramatic owns Bell-Phillip. *Id.* ¶ 12. Finally, it alleges that, because Bell Dramatic has substantial input into employment decisions affecting actors for Y&R, both entities are jointly and severally liable for decisions not to rehire Plaintiff on Y&R. *Id.* ¶ 14.

The arguments advanced by Bell-Phillip are based on factual issues and the evidence proffered in support of its motion. However, on a motion to dismiss, the factual allegations of a complaint are taken as true. Therefore, the Bell Motion is **DENIED** on this ground, without prejudice to the renewal of the issue at a later stage of the proceedings when the consideration of evidence would be appropriate.

                 b)      Second and Fourth Causes of Action (FEHA Claims)

Defendant Bell-Phillip next argues that the second and fourth causes of action under FEHA should be dismissed because Bell-Phillip was not named in the caption or body of the complaint that Plaintiff filed with the DFEH. Dkt. 93 at 8. Under California law, before a plaintiff can bring a civil action asserting claims of retaliation, that person must exhaust his or her administrative remedies by filing an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

administrative complaint with the DFEH. Cal. Gov. Code § 12965(b). Failure to exhaust administrative remedies is a jurisdictional defect that requires the dismissal of the complaint. *Okoli v. Lockheed Tech. Operations Co.*, 36 Cal. App. 4th 1607, 1613 (1995). "In order to bring a civil lawsuit under the FEHA, the defendants must have been named in the caption or body of the DFEH charge." *Cole v. Antelope Valley Union High School Dist.*, 47 Cal. App. 4th 1505, 1515 (1996). Defendant has presented a copy of Plaintiff's DFEH Complaint (Dkt. 93-2, Exh. A). It identifies Sony Entertainment, Corday and Bell Dramatic as parties; it does not name Bell-Phillip. Nor is Bell-Phillip named in the body of the complaint. *Id.*

There is a limited exception to the general rule requiring the exhaustion of administrative processes when the unnamed party had notice of the administrative proceeding, and participated in it. *See Sosa v. Hiraoka*, 920 F.2d 1451, 1459 (9th Cir.1990) (applying the exception in the context of EEOC proceedings); *see also Corkill v. Preferred Employers Grp., LLC*, 2011 WL 5975678, at *9 (S.D. Cal. Nov. 28, 2011) (extending the anticipation exception to DFEH proceedings); *Williams v. Gyrus ACMI, LP*, 2014 WL 4771667, at 4 (N.D. Cal. Sep. 24, 2014) (applying the anticipation exception to DFEH proceedings).

Plaintiff does not dispute that Bell-Phillip was not named in her DFEH complaint. Dkt. 108 at 26. Nevertheless, Plaintiff asserts that there is a jurisdictional basis to proceed against Bell-Phillip because it was put on notice of Plaintiff's DFEH complaint, which named its parent company, Bell Dramatic. *Id.* Plaintiff alleges that Bell Dramatic and Bell-Phillip share certain employees, some of whom participated in the DFEH proceedings on behalf of Bell Dramatic. *Id.*

Plaintiff has not established that any of the limited exceptions to administrative exhaustion applies in this action. Plaintiff alleges that Bell Dramatic owns Bell-Phillip, but cites no authority that one entity is put on notice of a DFEH complaint because it was served on its parent company. Plaintiff also alleges that employees who work for both Bell Dramatic and Bell-Phillip participated in the EEOC conciliation efforts. However, once again, no authority is cited to support this as an exception to the rule requiring exhaustion. Nor is there any showing that those employees represented any party other than Bell Dramatic during the DFEH proceedings. Similarly, there is nothing to suggest that Bell-Phillip actually participated in those proceedings. *See, e.g.*, *Corkill v. Preferred Emp'rs Group, LLC*, 2011 WL 5975678, at *8 (S.D. Cal. Nov. 28, 2011) (finding an exception applied where an unnamed party's counsel submitted to the DFEH an eight-page response to plaintiff's DFEH complaint, and where the unnamed party represented that the party who had been named was not the correct party).

For the foregoing reasons, the motion of Bell-Phillip is **GRANTED** on this ground as to the second and fourth causes of action, with leave to amend only if Plaintiff can do so in good faith in conformance with the analysis in this Order.

    2. <u>Bell Dramatic</u>

Bell Dramatic argues that the third and fourth causes of action should be dismissed as to Bell Dramatic, because Plaintiff "fails to tie in Defendant Bell Dramatic to B&B other than making a general assertion that Bell Dramatic owns Bell-Phillip." Dkt. 93 at 8. Bell Dramatic states that it does not own Bell-Phillip and has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

no relationship with B&B. *Id.* In support of these positions, Bell Dramatic once again relies on the declaration of Ann Willmott, Vice President of Operations for Bell-Phillip. In it, she states that Bell Dramatic does not own Bell-Phillip Dramatic is not associated with B&B. Dkt. 93-1.

The FAC alleges that Bell-Phillip has a 100% ownership interest in B&B. Dkt. 75 ¶ 12. It also alleges that Bell Dramatic owns Bell-Phillips. *Id.* Finally, it alleges that, because Bell-Phillip has substantial input into employment decisions affecting actors for B&B, both entities are jointly and severally liable for any decision not to rehire Plaintiff to appear on B&B. *Id.* at 24.

As stated above, these matters raise factual issues that cannot be resolved on a motion to dismiss. Therefore, the Bell Motion is **DENIED** on this ground, without prejudice to the renewal of the issue at a later stage of the proceedings when the consideration of evidence is appropriate.

    3.    <u>Corday</u>

Corday argues that Plaintiff's claims should be dismissed because, as a matter of law, Corday was not Plaintiff's "employer." Dkt. 95 at 12. Corday argues that the allegations in the FAC that Corday produces Y&R and has a 1% ownership interest in Y&R are incorrect. *Id.* Specifically, Corday argues that it has not produced Y&R since the mid-1970s and has no ownership interest in the program. *Id.* at 12-13. In support of these arguments Corday offers the declaration of Barry Felson, Executive Vice President of Corday. In it, he states that Corday has not played any role in casting or production of Y&R since the mid-1970s and that it has no present ownership interest in Y&R. Dkt. 95-1.

Plaintiff asserts that Corday does have an ownership interest in Y&R, and that Plaintiff should be permitted to engage in discovery on this issue. Dkt. 108 at 28.

For the same reasons stated above, these issues raise factual matters that cannot be resolved on a motion to dismiss. Therefore, the Corday Motion is **DENIED** on this ground, without prejudice to the renewal of the issue at a later stage of the proceedings when the consideration of evidence is appropriate.

    C.    Motion to Strike: Analysis

        1.    <u>Legal Standard</u>

"The anti-SLAPP statute[8] is designed to nip SLAPP litigation in the bud by striking offending causes of actions which chill the valid exercise of the constitutional rights of freedom of speech and petition . . . ." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (internal quotation marks omitted). Under Section 425.16, any "cause of action against a person arising from any act . . . in furtherance of the person's right of . . . free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the

---

[8] "SLAPP" is an acronym for "Strategic Lawsuit Against Public Participation."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1).

A two-step analysis is used to determine whether a motion to strike under Section 425.16 should be granted. *Navellier* v. *Sletten*, 29 Cal. 4th 82, 88 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause fits one of the categories spelled out in section 425.16 . . . ." *Id.* Second, if the claim arises from protected conduct, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* If the plaintiff cannot meet this burden, the claim must be stricken. *Id.*

In evaluating whether a defendant has made the threshold showing that the claims arise from conduct in furtherance of free speech, the statute "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a). Further, whether the statute applies does not turn on the manner in which a challenged claim is labeled. If a claim arises from conduct that was undertaken in furtherance of free speech, it falls within the scope of the statute. *See, e.g.*, *Navellier*, 29 Cal. 4th at 92 (Section 415.16's "definitional focus is not the form of the plaintiff's cause of action, but rather, the defendant's *activity* that gives rise to his or her asserted liability" (emphasis in original)).

An anti-SLAPP motion "may be filed within 60 days of the service of the complaint, or in the court's discretion, at any later time upon terms it deems proper." Cal. Code Civ. Proc. § 425.16(f). If such a motion is filed in a California Superior Court, discovery is automatically stayed and the opposing party must demonstrate "good cause" under section 425.16(g) to justify "specified discovery." *See* Cal. Code Civ. Proc. § 425.16(g). However, when such a motion is brought in a federal district court in California, the automatic discovery stay mechanism does not apply because it would conflict with Fed. R. Civ. P. 56. *Metabolife Int'l. Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). After comparing section 425.16(g) with Rule 56, *Metabolife* held that "[a]lthough Rule 56[] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

      2. <u>Application</u>

Sony Television, Sony Entertainment, CBS, Bell Dramatic, and Bell-Phillip challenge the second and fourth causes of action under FEHA through their respective motions under the anti-SLAPP statute. Accordingly, as required by the first step in the analysis, they must demonstrate that Plaintiff's claims arise from actions of Defendants undertaken in furtherance of their rights to expression. "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 52 P.3d 695, 701 (2002) (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

Defendants argue that these two causes of action arise from their alleged decision, which reflects the exercise of their rights to creative expression, not to restore Plaintiff's former character into episodes of Y&R or B&B. Prior cases have recognized that casting decisions are ones made in furtherance of the free speech rights of the parties who made them. In *Hunter v. CBS Broad., Inc.*, 221 Cal. App. 4th 1510, 1521 (2013), the plaintiff brought an employment discrimination claim asserting that CBS did not hire him to serve as a weather reporter on a local news program due to his age and gender. Plaintiff alleged that CBS instead selected young, attractive women for such positions. The court held that the conduct -- the selection of a weather anchor -- qualified as an act that was in furtherance of the exercise of free speech. *Id.* In *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 140 (Cal. Ct. App. 2011), a couple sued CBS for using their names as "placeholders" in the draft of a script for a television show.[9] *Hunter* concluded that defendants' alleged acts "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show" and were, therefore, ones undertaken in furtherance of their rights of expression. *Id.* at 143.

For reasons discussed above with respect to the motions to dismiss, these cases are distinguishable. Here, each of Plaintiff's claims alleges that Defendants retaliated against her for exercising her right to free speech in making statements about the need to increase the number of African-American actors in soap operas. Protecting the alleged retaliation against Plaintiff for making these statements would not be a recognized exercise of the Defendants' right to free speech. It is conduct that is distinguishable from selecting those who will appear on a television news show based on age or gender. Similarly, using certain names in drafts of scripts for a television show may assist the author in creating the script. Once again, such an exercise of speech is not the same as an act of alleged retaliation against a person who has made certain statements that are alleged to be critical of a defendant.

The analysis does not change where the alleged retaliation allegedly related to a casting decision. *See People ex rel. Fire Ins. Exch. v. Anapol*, 211 Cal. App. 4th 809, 822 (Cal. Ct. App. 2012) ("Determining whether a cause of action arises from protected speech . . . requires a focus on the *principal thrust* or *gravamen* of the cause of action. If the allegations of protected activity are merely incidental to a cause of action based essentially on non-protected activity, the allegations will not transform the non-protected cause of action into an action subject to the anti-SLAPP law.").

At this stage of this action, there is a factual conflict raised by the allegations of the FAC and Defendants' response. Defendants contend that permitting the claims to proceed would impinge their First Amendment rights to make casting decisions, in effect claiming that there was no retaliation, only a creative decision not to restore Plaintiff's character on either Y&R or B&B. In contrast, Plaintiff asserts that her exercise of free speech caused Defendants to retaliate against her and deny her such a position. Given this conflict, it is premature to address the anti-SLAPP motion. It may be renewed in response to any Second Amended Complaint that is filed. And, if it is, consideration whether the issues raised are

---

[9] The writer of the television script asserted that it was common to use real names as placeholders to help writers remember characters' names. *Id.* at 140. The couple's last name was changed before the show was broadcast. *Id.* at 143.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-02442 JAK (AGRx) | Date | November 10, 2015 |
|---|---|---|---|
| Title | Victoria Rowell v. Sony Pictures Television, Inc., et al. | | |

properly addressed prior to discovery can be considered in that context.

For the foregoing reasons, Defendants' Motion to Strike is **DEFERRED**.

### IV.     Conclusion

For the reasons stated in this Order, the Motions to Dismiss are **GRANTED IN PART** and **DENIED IN PART**. Specifically, all six causes of action are dismissed, with leave to amend. Defendants' requests to dismiss certain Defendants from certain causes of action are denied, with the exception of Bell-Phillip, who is dismissed from the second and fourth causes of action due to Plaintiff's failure to exhaust administrative remedies. The Motion to Strike is **DEFERRED**.

**IT IS SO ORDERED.**

                                                                                                      :

Initials of Preparer     ak