Dan Stormer, Esq. [S.B. # 101967]
Mohammad Tajsar, Esq. [S.B. #280152]
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
mtajsar@hadsellstormer.com

Cyrus Mehri, Esq.
Michael Lieder, Esq.
MEHRI & SKALET, PLLC
1250 Connecticut Ave. N.W., Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Facsimile: (202) 822-4997
Emails: cyrus@findjustice.com
mlieder@findjustice.com

Attorneys for Plaintiff
VICTORIA ROWELL

[Additional Counsel Cont. on next page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA ROWELL,<br><br>Plaintiff,<br><br>vs.<br><br>SONY PICTURES TELEVISION, INC., SONY PICTURES ENTERTAINMENT, INC., BELL DRAMATIC SERIAL COMPANY, L.P., BELL-PHILLIP TELEVISION PRODUCTION INC., CORDAY PRODUCTIONS, INC., and CBS CORPORATION,<br><br>Defendants. | Case No.: CV 15-02442-JAK (AGRx)<br><br>[Assigned to the John A. Kronstadt – Courtroom 10B]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>Complaint filed: February 11, 2015<br>Discovery Cut-Off: January 17, 2017<br>Motion Cut-Off: December 19, 2016<br>Trial Date: May 16, 2017 |

[Additional Counsel Cont. from previous page]

Robert John Valli, Jr.
Sara Wyn Kane
Valli Kane & Vagnini, LLP
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: 516-203-7180
Fax: 516-706-0248
Emails: rvalli@vkvlawyers.com
skane@vkvlawyers.com
tsinha@vkvlawyers.com

## INTRODUCTION

Briefing and decision on the motions for summary judgment filed by Defendant Corday Productions, Inc. ("CPI") and Defendants Sony Pictures Television, Inc. and Sony Pictures Entertainment, Inc. (together "Sony") should be deferred because Plaintiff Victoria Rowell, through no fault of her own, has been unable to complete long-noticed and critical depositions. Ms. Rowell should be allowed to complete her depositions, and then file a replacement for this opposition that contains the additional material information that she has acquired. But even if the requested permission to file a replacement opposition is denied, she shows below that there are genuine disputes of material fact that preclude the grant of either motion for summary judgment.

## SUMMARY OF FACTS

Plaintiff Victoria Rowell was a star on the daytime soap opera "The Young and the Restless" ("Y&R") for 14 years, winning or garnering numerous nominations for prestigious acting awards, including three Daytime Emmys, 12 NAACP Image awards, and five Soap Opera Digest awards. Ex. Q (IMDB List of Awards). After she left Y&R in 2007, however, she began to publicly speak out against racial discrimination in the soap opera industry in general and on Y&R, which is produced by Defendant Sony, in particular. For example, she was featured in a front-page article run by a network of African American newspapers in January 2011 entitled, "Racism at CBS Television, Sony Entertainment and Bell Dramatic for 37 Years." Ex. M (*Sentinel* article). Ms. Rowell has not been employed in the soap opera industry since then, which she attributes to retaliation for her advocacy. Ex. D (Rowell 10-4-16 Tr.) at 9:16-18:2, 86:18-91:5.

In early 2013, Ms. Rowell through her agent submitted her name for the role of Melinda Trask on the soap opera "Days of Our Lives" ("DOOL") pursuant to a "breakdown," essentially a "help wanted" advertisement, issued by DOOL's casting

director Marnie Saitta. CPI's Statement of Undisputed Facts, ¶¶ 1-2. DOOL is produced by Defendant CPI "in association with" Sony. Ms. Rowell believed that she was an ideal candidate for the position because the breakdown sought a "35·50 year old AFRICAN AMERICAN OR ASIAN FEMALE. . . . PLEASE SUBMIT VERY EXPERIENCED ACTORS ONLY – HEAVY DIALOG - NAME ACTORS WELCOMED. Please be very specific with your submissions. RECURRING ROLE." Ex. K (Melinda Trask breakdown).

Even though she met all of the qualifications sought in the breakdown, Ms. Rowell was not auditioned or otherwise contacted about the role. CPI's Statement of Undisputed Facts, ¶ 5. Her agent, Richard Lewis, spoke with Ms. Saitta, and then wrote an email to Ms. Rowell, explaining, "The 'Days' role is not going anywhere. Marnie had you on the list and the producers didn't feel it was quite the right fit." Ex. L (email exchange between Lewis and Rowell). Mr. Lewis also orally told Ms. Rowell that the producers did not believe that it was the correct role for her to reemerge into daytime. Ex. D (Rowell 10-4-16 Tr.) at 37:9-38:13.

About three weeks later, Ms. Rowell had a conversation with Ms. Saitta, whom she knew as the casting director for Y&R. During the conversation, Ms. Saitta informed Ms. Rowell that she had placed Ms. Rowell's name on lists for numerous roles, without success. She said that one reason was that decisionmakers thought the roles were too small for a star like Rowell. Ex. D (Rowell 10-4-16 Tr.) at 50:10-51:7. During the conversation, Ms. Rowell suggested the possibility that Steve Kent, a Sony executive who oversees Sony's interests on DOOL, was blocking her, and Ms. Saitta responded that he had "a lot of sway." Ex. E (Rowell 10-31-16 Tr.) at 207:4-208:2.

The decision not to pursue Ms. Rowell does not make sense as a financial matter. DOOL was in last place in ratings for daytime soap operas, Ex. N (article entitled, "Daytime Ratings: Y&R, B&B, GH, DAYS All Down In Total Viewers"),

and during the years leading up to 2013 there had been serious concerns that NBC would not renew its licensing agreement for DOOL. Ex. P (K. CORDAY, DAYS OF OUR LIVES) at 233-36). The producers and Ms. Saitta thus were interested in hiring big name actors and actresses for DOOL to try to improve ratings, Ex. B (Saitta Tr.) at 62:16-64:3, and Ms. Rowell was a big name, award-winning actress interested in the role. Ex. Q (List of awards from IMDB).

But CPI was dependent on Sony, whose discriminatory practices Ms. Rowell had publicly criticized, for the operations and very survival of DOOL. The head of Sony Pictures Television, Steve Mosko, had virtually begged NBC to relicense DOOL several years before, causing Ken Corday to call him in writing a "wonderful partner, protector and friend." Ex. P (K. CORDAY, DAYS OF OUR LIVES), at 233-36. Sony, instead of CPI, handled HR functions, finances, marketing and merchandising for DOOL. Ex. O (Stormer Decl.), at ¶¶ 3-6.

**PLAINTIFF'S EFFORTS TO CONDUCT DEPOSITIONS**

Ms. Rowell has never spoken with any of CPI's executive producers of DOOL in 2013, and neither Defendant has produced documents shedding light on why Ms. Rowell was not pursued. Thus, depositions of CPI's decision-makers are critical to Ms. Rowell's efforts to prove her claims.

Ms. Rowell has focused on five 30(b)(1) deponents: Mr. Corday, two other Corday executive producers (Greg Meng and Lisa de Cazotte), Ms. Saitta, and Mr. Kent of Sony. Tajsar Decl., ¶ 24. Despite her best efforts, Ms. Rowell was able to complete the deposition of the first of them (Ms. de Cazotte) only today, *id.*, ¶ 21, even though she identified the witnesses (other than Ms. de Cazotte) over three months ago. *Id.*, ¶ 5.[1] Defendants failed to discuss mutually convenient dates until

---

[1] Plaintiff actually started the discovery process in 2015, but Sony did not complete the bulk of its document production until September 2016, forcing Plaintiff to postpone her deposition planning until October 2016. Tajsar Decl., ¶¶ 3-4.

reminded twice by Ms. Rowell, costing a month of time, *id.*, ¶ 8, and then the difficulties of coordinating the schedules of lawyers and busy witnesses have resulted in a series of deposition delays. *Id.*, ¶¶ 9-19. Depositions are now scheduled to be completed for three of the other four witnesses by January 19, *id.*, ¶ 24, while completion of the other deposition depends on the resolution of a dispute over documents that Plaintiff intends to use as exhibits. *Id.*, ¶ 10.

## ARGUMENT

### I. PLAINTIFF SHOULD BE PERMITTED UNDER RULE 56(d)TO FILE REPLACEMENT OPPOSITIONS TO SUMMARY JUDGMENT SEVEN DAYS AFTER THE DEPOSITIONS ARE COMPLETED

The Federal Rules authorize a court to issue an appropriate order, including "defer[ring] considering [a summary judgment] motion or deny[ing] it or "allow[ing] time . . . to take discovery" if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

As this Court has explained:

> In making a request pursuant to Rule 56(d), a party must make clear "what information is sought and how it would preclude summary judgment." *Garrett v. San Francisco*, 818 F.2d 1515, 1518 (9th Cir.1987). "[T]he party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Cont'l Mar. of San Francisco, Inc. v. Pac. Coast Metal Trades Dist. Council, Metal Trades Dep't, AFL-CIO*, 817 F.2d 1391, 1395 (9th Cir. 1987). "[W]here plaintiffs failed to exercise due diligence, filed an untimely request, or failed to explain why discovery was not conducted, Rule 56(d) discovery requests may be denied."

*Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1078 (N.D. Cal. 2011) . . . .

*Fid. & Guar. Ins. Co. v. KB Home Coastal, Inc.*, ED CV13-00946 JAK (DTBx), 2014 U.S. Dist. LEXIS 184844, at *18 (C.D. Cal. Sep. 30, 2014) (Kronstadt, J.).

Ms. Rowell has met this standard. First, she has exercised due diligence in her efforts to conduct the depositions. She informed Defendants of the identities of witnesses that she sought to depose shortly after Sony completed the bulk of its document production, more than three months before the due date for opposing summary judgment. This distinguishes her from the plaintiff in *Fidelity & Guaranty Insurance*, who did not notice depositions until three months after the briefing on summary judgment was scheduled to begin. 2014 U.S. Dist. LEXIS 184844, at *20. Since then she has pursued these depositions assiduously, with a steady stream of communications with Defendants about scheduling the depositions. Tajsar Decl., ¶¶ 9-19 and Exs. A, C, F, I. Ms. Rowell has shown her diligence in other ways as well. For example, when Ms. Saitta revealed that Ms. de Cazotte might possess important information, Ms. Rowell promptly noticed her deposition. Tajsar Decl., ¶¶ 20-21. The delays have been caused primarily by scheduling conflicts, the holidays, and the fact that the three CPI executive producers have been available for only partial rather than full day depositions. *Id.*, ¶¶ 12, 18.

Plaintiff's declaration also is specific in identifying evidence that they hope to develop in a manner that goes far beyond merely "express[ing] the hope that evidence to contradict the affidavits would transpire at deposition." *Fid. & Guar. Ins. Co.*, 2014 U.S. Dist. LEXIS 184844, at *18-19 (quoting *Cont'l Mar. of San Francisco*, 817 F.2d at 1395. The declaration identifies the propositions that Ms. Rowell anticipates developing during the depositions and explains through citations to the evidence why it is reasonable to believe that the anticipated testimony will be

forthcoming. Tajsar Decl., ¶¶ 26, 28, 29, 30, 33, 34, 37, 38. The declaration also explains why this evidence is important to the case by putting it in the context of Defendants' arguments in support of summary judgment. *Id.*, ¶¶ 26-27, 31-32, 35-36.

This is the type of declaration that is contemplated by Rule 56(d) and the decisions of the Ninth Circuit. The motion should be granted for that reason alone.

This case provides an additional basis for granting the motion: it will not unduly prejudice Defendants or delay adjudication of the motion for summary judgment. The hearing on the motions for summary judgment will occur on February 13, 2017. Order of Dec. 20, 2016 (Dkt. No. 172). That provides time for Ms. Rowell to complete her depositions on January 19 (assuming no more delays) and file her fleshed-out opposition on January 26. Defendants could still have two weeks to file their reply briefs, by February 9. That is four days before the hearing. Defendants will not have to rewrite their motions for summary judgment or incur any other unexpected expense. They merely will have to defend the depositions that they already intend to defend. There is no reason not to grant Plaintiff's Rule 56(d) motion.

## II. EVEN WITHOUT THE DEPOSITIONS, MS. ROWELL HAS CREATED GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE THE GRANT OF SUMMARY JUDGMENT TO EITHER DEFENDANT

### A. Material Factual Disputes Preclude Summary Judgment to CPI

The linchpin of CPI's arguments is the proposition that Ms. Saitta acted on her own in deciding not to move forward on Ms. Rowell's interest in the position. Ms. Rowell testified that she believed that Ms. Saitta celebrates diversity and, if anything, viewed Plaintiff's advocacy for diversity and inclusion positively. CPI's

Statement of Undisputed Facts, ¶ 12. That testimony undercuts Ms. Rowell's retaliation claim – if Ms. Saitta was the sole decisionmaker.

But CPI's rhetorical structure crumbles if one of the executive producers were involved in the decision about Ms. Rowell. Without evidence that they thought favorably of Ms. Rowell's advocacy, the lack of economic sense in failing to explore Ms. Rowell's interest in the role comes to the forefront. As explained above, DOOL was in a precarious financial position, and bringing in a star who might boost viewership would be a prudent business decision. *See supra* at 2-3. The decision not to do so makes sense only in the context of antipathy toward Rowell for spotlighting the discrimination of the entire industry or on a desire to placate Sony, on whom CPI was dependent. *See supra* at 3. As Ms. Saitta explained, Sony's representative Steve Kent had "a lot of sway." Ex. D (Rowell 10-4-16 Tr.) at 207:4-208:2.

A genuine factual dispute thus exists about whether Ms. Saitta acted unilaterally. She states that she did in her declaration, but that is contradicted by her statements to Ms. Rowell and her agent that "the producers" decided that Ms. Rowell was not a good fit. Ex. D (Rowell 10-4-16 Tr.) at 37:9-41:2, 50:2-51:19, 66:5-67:16; Ex. E (Rowell 10-31-16 Tr.) at 150:15-153:21, 206:15-208:8; Ex. L (email chain between Victoria Rowell and Richard Lewis dated Feb. 25, 2013). It also is contradicted by Ms. Saitta's statement that her repeated suggestions of Ms. Rowell for roles were rejected. Ex. D (Rowell 10-4-16 Tr.) at 60:22-62:1. The factfinder should determine whether it finds the explanation that Ms. Saitta acted alone or with instructions more credible.

CPI cannot escape the suggestion that CPI was retaliating on its own or not to run afoul of Sony by arguing that suggestions that Ms. Rowell was not a good fit. As numerous courts have recognized, rejection of a candidate based on a concept that she was not a "good fit," or was "overqualified," is ambiguous. It may be non-

discriminatory, especially if grounded in a partially objective determination, but subjective evaluations that a candidate is not a "good fit" also easily can hide discriminatory motives. *See, e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 253 (2d Cir. 2014) (reversing grant of summary judgment in a retaliation case because jury could have concluded that statements about one employee's "better fit" or "fitting in" reflected improper motive). In *Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004), the Fifth Circuit explained:

> In fact, the explanation given by the [employer], i.e., that [employee] was not "sufficiently suited" for the position—even including [supervisor's] belief that she would not "fit in"—does not necessarily qualify as a "nondiscriminatory" reason. After all, a hiring official's subjective belief that an individual would not "fit in" or was "not sufficiently suited" for a job is at least as consistent with discriminatory intent as it is with nondiscriminatory intent: The employer just might have found the candidate "not sufficiently suited" because of a protected trait such as age, race, or engaging in a protected activity. We hold as a matter of law that justifying an adverse employment decision by offering a content-less and nonspecific statement, such as that a candidate is not "sufficiently suited" for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnell Douglas*. It is, at bottom, a non-reason.

*Id.* at 317. Similarly, suggestions that Ms. Rowell was too big a star for the role, that is, that she was "overqualified," are at best ambiguous. *See Taggart v. Time, Inc.*, 924 F.2d 43, 48 (2d Cir. 1991) ("refusing to hire Taggart for the sole reason that he was overqualified refutes Time's assertion that it was not discriminating on the basis of age").

For these reasons, CPI's motion should be denied even if any evidence developed in the remaining depositions is not considered. A jury should decide whether CPI retaliated against Ms. Rowell.

### B. Material Factual Disputes Preclude Summary Judgment to Sony

Sony grounds its motion for summary judgment primarily in its contentions that it was just the distributor of DOOL, had no role in the hiring of talent, and

certainly had no role in the decision not to hire Ms. Rowell. But where CPI stopped and Sony started with respect to DOOL is not so easily determined. Sony performed for DOOL basic legal functions: human resources, financial management, marketing, and merchandising. Ex. O (Stormer Decl.), ¶¶ 3-6. Ken Corday characterized the head of Defendant Sony Pictures Television as a "wonderful partner, protector and friend." Ex. P (K. CORDAY, DAYS OF OUR LIVES), at 233-36. The same statement could be made of Sony as a whole: it was CPI's partner and protector when it came to DOOL. As such, it is a joint employer with CPI. But they are not equal partners. CPI depends on Sony. Sony has the economic power to exert control over any aspect of the operations of DOOL that it wants.

Sony merely had to suggest that Ms. Rowell had harmed its interests for CPI to steer clear of hiring her. This need not have occurred during the period between her expression of interest and the decision not to hire her. A jury should determine whether Sony exercised its "sway" in a manner that resulted in a hiring decision adverse to Ms. Rowell.

## CONCLUSION

For the reasons set forth above, in the Statements of Genuine Disputes, and in the declarations and evidence that Ms. Rowell has presented, Defendants' motions for summary judgment should be denied.

Dated: January 9, 2017

Respectfully Submitted,

MEHRI & SKALET, PLLC
VALLI KANE & VAGNINI, LLP
HADSELL STORMER & RENICK LLP

By: /s/ - Dan Stormer
Dan Stormer
Mohammad Tajsar
Attorneys for Plaintiffs